SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON (Cal. Bar No. 168646)
JAY T. RAMSEY (Cal. Bar No. 273160)
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
ALYSSA SONES (Cal. Bar No. 318359)
PATRICK D. RUBALCAVA (Cal. Bar No. 335940)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701
E mail:        ccardon@sheppardmullin.com
               jramsey@sheppardmullin.com
               baigboboh@sheppardmullin.com
               asones@sheppardmullin.com
               prubalcava@sheppardmullin.com

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SPECTOR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>Defendant. | Case No.: 4:24-cv-06617-HSG<br><br>*Assigned to the Hon. Haywood S. Gilliam, Jr.*<br><br>**DEFENDANT WILLIAMS-SONOMA, INC.'S MOTION TO DISMISS**<br><br>Hearing Date:   December 12, 2024<br>Hearing Time:   2:00 p.m.<br>Courtroom:       2 |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

    A.    Plaintiff Lacks Standing to Bring This Action ............................................ 3

        1.    Plaintiff Fails to Demonstrate a Concrete Harm ................................. 4

        2.    Each Court to Address this Issue Has Found No Concrete Harm. ....................................................................................... 5

            a.    *Hartley* ..................................................................................... 5

            b.    *D'Hedouville* .......................................................................... 8

            c.    Summary ................................................................................... 9

    B.    Plaintiff Fails to State a Claim Under the Arizona Records Act ................... 10

        1.    The Arizona Records Act Regulates Records of a Telephone or Other Communications Service Provider Providing A Platform—It Does Not Regulate Parties to a Communication. ......... 10

        2.    Plaintiff Has Not Alleged That She Is a Customer As Required By The Arizona Records Act. ........................................................... 15

IV.    CONCLUSION .................................................................................................... 16

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Federal Cases</u>

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...................................................................................... 10

*Balistreri v. Pacifica Police Dep't*
   901 F.3d 696 (9th Cir. 1988) ........................................................................ 10

*Bassett v. ABM Parking Services, Inc.*
   883 F.3d 776 (9th Cir. 2018) .......................................................................... 7

*Bates v. United Parcel Servs., Inc.*
   511 F.3d 974 (9th Cir. 2007) .......................................................................... 4

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ............................................................................... 10, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
   65 F. Supp. 3d 840 (N.D. Cal. 2014) ........................................................... 10

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ......................................................................................... 4

*Hartley v. Urban Outfitters, Inc.*
   -- F. Supp. 3d --, 2024 WL 3445004 (E.D. Pa. July 17, 2024) ............. passim

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
   546 U.S. 694 (1982) ....................................................................................... 3

*Kamal v. J. Crew Group, Inc.*
   918 F.3d 102 (3d Cir. 2019) ........................................................................... 7

*Kokken v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994) ....................................................................................... 3

*Leocal v. Ashcroft*
   543 U.S. 1 (2004) ......................................................................................... 13

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ....................................................................................... 4

*McCarthy v. United States*
   850 F.2d 558 (9th Cir. 1988) .......................................................................... 4

*Pistor v. Garcia*
    791 F.3d 1104 (9th Cir. 2015)........................................................................4

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ........................................................................................4

*Steel Co. v. Citizens for a Better Environment*
    523 U.S. 83 (1998) ..........................................................................................4

*Thompson v. McCombe*
    99 F.3d 352 (9th Cir. 1996)...........................................................................4

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) ...............................................................................3, 5, 7

*United States v. Bahe*
    201 F.3d 1124 (9th Cir. 2000) .....................................................................13

State Cases

*State v. Barnett*
    101 P.3d 646 (Ariz. Ct. App. 2004) ............................................................13

Docketed Cases

*Campos v. TJX Companies, Inc.*
    Case No. 1:24-cv-11067 (D. Mass.) ..............................................................1

*Carbajal v. Gap Inc.*
    Case No. 2:24-cv-01056-ROS (D. Ariz.).......................................................1

*Carbajal v. Home Depot U.S.A., Inc.*
    Case No. 2:24-cv-00730-DGC (D. Ariz.) ......................................................1

*D'Hedouville v. H&M Fashion USA, Inc.*
    Case No. C20243386 (Ariz., Pima Cnty. Sup. Ct.) ........................1, 8, 9, 12

*Dominguez v. Lowe's Cos., Inc.*
    Case No. 2:24-cv-01030-DLR (D. Ariz.) ......................................................1

*Knight v. Patagonia, Inc.*
    Case No. 2024CUBT030800 (Cal., Ventura Cnty. Sup. Ct.) .........................1

*McGee v. Nordstrom, Inc.*
    Case No. 2:23-cv-01875 (W.D. Wash.) .........................................................1

MOTION TO DISMISS

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Eavesdropping and Communications Act ........................................................................... 13

Fair and Accurate Credit Transactions Act of 2003 ........................................................... 7

State: Statutes, Rules, Regulations, Constitutional Provisions5

Arizona Telephone, Utility, and Communication Service Records Act (Arizona
    Records Act), Ariz. Rev. Stat. Ann.
        § 44-1376.01. ............................................................................................ passim

Other Authorities

2006 Arizona Lesiglation Sessions Ch. 260
    (House Bill 2785) .......................................................................................................... 11

Arizona Local Rules of Practice ................................................................................... 4, 10

Restatement (Second) of Torts
    § 652B ...................................................................................................................... 8

**NOTICE OF MOTION AND MOTION**

Please take notice that, on December 12, 2024, or as soon as thereafter may be heard in Courtroom 2 of the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, the Honorable Haywood S. Gilliam, Jr. presiding, Defendant Williams-Sonoma ("Defendant") will and hereby does, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Civil Local Rule 7-2, submit this Motion to Dismiss (the "Motion") of Plaintiff Karen Spector's ("Plaintiff") Complaint.[1]

Defendant seeks an order dismissing Plaintiff's Complaint in its entirety.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This case is part of a "recent wave" of putative class actions brought by the same law firm throughout the country under the Arizona Telephone, Utility, and Communication Service Records Act (the "Arizona Records Act"), Ariz. Rev. Stat. Ann. § 44-1376 *et seq.*. *See Hartley v. Urban Outfitters, Inc.*, -- F. Supp. 3d --, 2024 WL 3445004, at *4 (E.D. Pa. July 17, 2024).[2]   The Arizona Records Act was enacted to prevent pretexting, i.e., the criminal act of obtaining confidential telephone records and personal information under false pretenses.

---

[1] Defendant reserves its right to move to compel arbitration.  Defendant recently learned that Plaintiff is one of Defendant's loyalty members and, therefore, may have agreed to an arbitration provision.  Defendant sought an extension of its deadline to respond to the Complaint upon receiving this information, but did not hear back from Plaintiff's counsel, thus necessitating the filing of this Motion in order to respond to the Complaint timely.

[2] Additionally, Defendant's counsel is aware of several recent cases in this circuit alleging very similar claims under the Arizona Records Act.  *See Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:24-cv-00730-DGC (D. Ariz.); *Carbajal v. Gap Inc.*, Case No. 2:24-cv-01056-ROS (D. Ariz.); *Dominguez v. Lowe's Cos., Inc.*, Case No. 2:24-cv-01030-DLR (D. Ariz.); *Knight v. Patagonia, Inc.*, Case No. 2024CUBT030800 (Cal., Ventura Cnty. Sup. Ct.); *D'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386 (Ariz., Pima Cnty. Sup. Ct.); *see also McGee v. Nordstrom, Inc.*, Case No. 2:23-cv-01875 (W.D. Wash.); *Campos v. TJX Companies, Inc.*, Case No. 1:24-cv-11067 (D. Mass.).

Plaintiff, on behalf of a putative class, asserts that Defendant violated the Arizona Records Act by sending promotional emails to Plaintiff and tracking certain consumer information via pixels embedded in the emails.  Until this recent wave of cases, the Arizona Records Act, enacted in 2006 and amended once in 2007, had never been contorted to cover industry-standard tracking of promotional emails.

Plaintiff fails to demonstrate any injury as a result of Defendant's alleged tracking of consumer information via its promotional emails.  The only courts to entertain claims similar to Plaintiff's here have found them insufficient under the Arizona Records Act. *See Hartley*, 2024 WL 3445004; Request for Judicial Notice ("RJN"), Ex. B ("*D'Hedouville*") at 3–4 ("[N]o Arizona court has interpreted" the Arizona Records Act to apply to "information gleaned from a tracking pixel.").

Even if she had, Plaintiff also fails to state a claim under the Arizona Records Act, a statute which was not envisioned to empower the cause of action Plaintiff brings.

## II.   BACKGROUND

Plaintiff filed the Complaint on August 22, 2024.  Dkt. 1., Ex. A ("Compl.").  The Complaint asserts one count of violation of the Arizona Records Act relating to pixels Plaintiff alleges Defendant embedded into promotional emails it sends to customers and others who sign up to receive such.  *Id.* ¶¶ 3–4.

Plaintiff alleges Defendant conveys such promotional emails "to track its recipients' reading habits" in order to "build customer profiles so it can sell and market more products to them."  *Id.* ¶ 2.  According to Plaintiff, Defendant "embeds hidden spy pixel trackers within its email," which "capture and log sensitive information including the time and place subscribers open and read their messages, how long it takes the subscriber to read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to."  *Id.* ¶ 4.  According to Plaintiff, Defendant utilizes pixels through a software platform from Nexxen International Ltd. ("Nexxen").  *Id.* ¶ 43.  Therefore, Plaintiff alleges, Defendant is

"sharing its user data with Nexxen." *Id.* ¶ 45.  Plaintiff further alleges Defendant did not receive the recipients' consent to collect this information.  *Id.* ¶ 4.

Plaintiff claims she has opened and reviewed promotional emails from Defendant for the past two years.  *Id.* ¶ 7.  She seeks to represent a class of "[a]ll persons within Arizona who have opened a marketing email containing a tracking pixel from Defendant." *Id.* ¶ 46.  Plaintiff alleges that Defendant's conduct "invaded Plaintiff's and Class members' sensitive reading habits, including when they opened and read an email.  This clandestine collection of their confidential email records also intruded upon their seclusion." *Id.* ¶ 63.

## III.   **ARGUMENT**

The Court should dismiss this action for two reasons: (ii) first, Plaintiff lacks standing to bring this action; and (ii) next, Plaintiff fails to state a claim under the Arizona Records Act.

### A.   **Plaintiff Lacks Standing to Bring This Action**

Plaintiff lacks Article III standing to bring this action, and the Court, therefore, lacks subject matter jurisdiction over this matter.  Federal courts are courts of "limited jurisdiction" and the law presumes that "a cause lies outside of this limited jurisdiction." *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 546 U.S. 694, 701–02 (1982). Article III limits the jurisdiction of federal courts to actual cases or controversies. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  A determination that the court lacks subject matter jurisdiction requires dismissal.  *See* Fed. R. Civ. P. 12(h)(3).  Here, Plaintiff lacks Article III standing because she has not alleged a concrete harm, and, therefore, the Court does not have subject matter jurisdiction over Plaintiff's claims and dismissal is required.

A defendant may challenge a plaintiff's standing by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds of lack of subject matter

jurisdiction because "the issue of standing is jurisdictional." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998).  When subject matter is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving that jurisdiction exists. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  When the court is presented with a challenge to its subject matter jurisdiction, "no presumptive truthfulness attaches to a plaintiff's allegations." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (cleaned up).  In addressing this issue, the court is not limited to the Complaint, but may consider outside evidence and resolve factual issues that go to the issue of the court's subject matter jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

To have Article III standing, a plaintiff must demonstrate: (1) she has suffered "injury in fact—an invasion of a legally protected interest which is … concrete and particularized"; (2) "a causal connection between the injury and the conduct complained of"; and (3) the likelihood "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).  These requirements do not change in a class action—the named plaintiff must establish Article III standing.  *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1989)).  To establish this element, "a plaintiff must allege 'an invasion of a legally protected privacy interest'" that is concrete—meaning it "must actually exist"—as well as particularized—meaning it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560).  Moreover, the harm alleged must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  "Abstract injury is not enough." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

### 1.     *Plaintiff Fails to Demonstrate a Concrete Harm*

Plaintiff's claims arise out of Defendant's alleged use of pixels that identify when emails were opened and read.  The Arizona Records Act makes it unlawful for a person to

-4-

MOTION TO DISMISS

"[k]nowingly procure … [a] communication service record" of any Arizona resident

"without the authorization of the customer[.]" *Id.* § 44-1376.01.  The statute defines

"communication service record" as including "subscriber information," like a person's

"name, … electronic account identification and associated screen names … or access

logs," as well as "records of the path of an electronic communication between the point of

origin and the point of delivery and the nature of the communication service provided,

such as … electronic mail … or other service features." *Id.* § 44-1376(1).

To satisfy the concrete harm requirement, a plaintiff must "identif[y] a close

historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at

423.  The injury Plaintiff is alleged to have suffered must be the same that a "traditional

cause[] of action" seeks to prevent.  *Id.* (citation and internal quotation marks omitted).

The Complaint is devoid of any articulable theory of harm suffered by Plaintiff,

with the exception of one conclusory paragraph asserting Defendant "invaded Plaintiff's

and Class members' right to privacy by its invasive surveillance of Plaintiff's and Class

members' sensitive reading habits," which allegedly "also intruded upon their seclusion."

Compl. ¶ 63.  There are no allegations of any "concrete" injury sustained by Plaintiff as a

result of the alleged invasion of privacy.

### 2.     Each Court to Address this Issue Has Found No Concrete Harm.

As stated above, while the Arizona Records Act was enacted in 2006 and amended

once in 2007, claims similar to those Plaintiff alleges here are a recent phenomenon.  Yet,

both of the courts to analyze the substance of the plaintiff's claims in these cases have

found that the plaintiff lacked standing.

### a.     *Hartley*

The Eastern District of Pennsylvania court in *Hartley* recently determined that the

plaintiff's claims, brought by the same firm representing the Plaintiff in this case, and

identical to the claims asserted here, did not sufficiently allege a concrete harm.  *Hartley*,

MOTION TO DISMISS

1  2024 WL 3445004, at *7.[3]  First, the court determined that Plaintiff's claim under the

2  Arizona Records Act did not demonstrate an invasion of privacy.  *Id.* at *4.  In so doing,

3  the court noted: (1) the Arizona Records Act "has never been invoked in a civil action of

4  this nature"; (2) the Telephone Records and Privacy Protection Act of 2006, the federal

5  counterpart to the Arizona Records Act, "is narrower in scope, plainly does not cover

6  Defendant's alleged conduct, and therefore is of limited help"; (3) the plaintiff did not

7  allege any disclosure of any information to third parties, thus distinguishing claims for

8  appropriation of name or likeness, publicity given to private life, or false light; and (4)

9  Supreme Court and Third Circuit authority "caution against finding a concrete harm when

10  there is no actual dissemination, even if that information is protected by statute." *Id.* at

11  *4–5.

12  All of these bases for distinguishing a common law claim for invasion of privacy

13  are also present here.  Here, Plaintiff alleges Defendant "is sharing its user data with

14  Nexxen" because Nexxen operates the software platform through which Defendant

15  operates pixels on its promotional emails.  Compl. ¶¶ 43–45.  To the extent Plaintiff will

16  argue that Nexxen's provision of software amounts to disclosure to a third party, such an

17  argument is misplaced.  Plaintiff, appearing to quote Nexxen's publicly-available website,[4]

18  states Nexxen "help[s] maximize [Defendant's] operational efficiency and minimize data

19  leakage[.]" *Id.* ¶ 45.  Using this questionable premise, Plaintiff then concludes that

20  Defendant must be disclosing user information to Nexxen.  *See id.*  But Plaintiff fails to

21  state how or through what mechanism Defendant provides user information to Nexxen.

22

---

23  [3] After the district court dismissed the Complaint in *Hartley*, the plaintiff re-filed in the

24  Court of Common Please, Philadelphia County, Pennsylvania.  The state court dismissed
   the Complaint with prejudice, finding that it "must agree with Defendant's well reasoned

25  arguments that the allegations of injuries in the underlying complaint do not sufficiently
   allege the requisite concrete, particularized and actual or imminent injury to confer

26  standing in Pennsylvania courts." RJN, Ex. A (*Hartley II*) at 1 n.1.

27  [4] The link included in footnote 57 of the Complaint is no longer operational.  Defendant,
   therefore, assumes based on context that Plaintiff is quoting directly from Nexxen's

28  website.

MOTION TO DISMISS

Even if she did, to the extent Nexxen has access to user information by virtue of Defendant utilizing its service to communicate with those users, Nexxen would be acting as Defendant's agent, and, therefore, a party to the communication (and not a "third party"). Anything to the contrary would have wide-reaching ramifications—every single website operator utilizing software developed by another entity to communicate with users would be found to be disclosing that information to a third party.

The Complaint here is devoid of any concrete allegations that Defendant disclosed Plaintiff's information to any other third party. *See generally* Compl. As the *Hartley* court noted, the Supreme Court in *TransUnion* "differentiated between class members whose misleading credit files were disseminated to third parties and those class members whose files were inaccurate but maintained only internally by the credit reporting agency." *Hartley*, 2024 WL 3445004, at *5 (citing *TransUnion*, 594 U.S. at 432–34). The Supreme Court held that individuals whose files were not disclosed could not have suffered any concrete harm and rejected arguments that the potential for dissemination was sufficient to confer standing. *TransUnion*, 594 U.S. at 434.

The *Hartley* court also relied on *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 113 (3d Cir. 2019), wherein the Third Circuit held that plaintiff's allegations that the defendant printed on sales receipts the first five and last four digits of plaintiff's credit card number, in violation of the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which prohibits the printing of more than the last five digits, did not allege a concrete injury, because plaintiff failed to allege disclosure to a third party. The Ninth Circuit has held similarly, finding a plaintiff did not allege a concrete injury under Article III in a case alleging a violation of FACTA based on the inclusion of credit card expiration dates on receipts. *See Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776, 778 (9th Cir. 2018). In *Bassett*, the Ninth Circuit determined the plaintiff's alleged injury of "exposure … to identity theft and credit/debit fraud" and "imminent risk" that his "property would be stolen and/or misused by identity thieves" was insufficient to confer Article III standing. *Id.*

1    Next, the *Hartley* court determined the plaintiff's claim under the Arizona Records

2  Act was unlike common law intrusion upon seclusion.  *See* 2024 WL 3445004, at *5–6.

3  "One who intentionally intrudes … upon the solitude or seclusion of another of his private

4  affairs or concerns, is subject to liability to the other for invasion of his privacy, if the

5  intrusion would be highly offensive to a reasonable person."  Restatement (Second) of

6  Torts § 652B.  In finding that the challenged conduct would not be offensive to a

7  reasonable person, the court emphasized that the plaintiff "opted in to receiving emails

8  from Defendant by joining its subscriber list" and "continued to consume its promotional

9  materials by regularly opening them."  2024 WL 3445004, at *6.  "As a willing

10  subscriber, Plaintiff could not have been harmed by Defendant's procurement of her name

11  or associated email addresses—details she necessarily provided to Defendant when she

12  signed up for its promotional emails."  *Id.*  Further, "[a]s a matter of law, … digital records

13  reflecting merely the dates and times at which Plaintiff opened promotional emails she

14  signed up to receive, and the length of time she spent reading them, are not sufficiently

15  personal to support a concrete injury."  *Id.* at *7.

16    Similarly, here, Plaintiff does not allege that she did not affirmatively sign up to

17  receive Defendant's promotional emails.  In fact, she concedes she has frequently opened

18  Defendant's promotional emails within the past two years, most recently within the last six

19  months.  Compl. ¶ 7.  Nor does Plaintiff allege that she never agreed to Defendant's

20  privacy policy (such as through purchase or membership in Defendant's loyalty program),

21  which specifically empowers Defendant to collect the types of information challenged in

22  the Complaint.

23          **b.     *D'Hedouville***

24    More recently, and following *Hartley*, the Arizona Superior Court in *D'Hedouville*

25  found that a plaintiff alleging substantially similar claims to the Plaintiff here failed to

26  allege "a distinct and palpable injury and thus does not have standing."  *D'Hedouville* at 4.

27    The court, considering the plaintiff's allegation that the defendant "intruded into

28  Plaintiff's and Class Members' private affairs and revealed their private information,

MOTION TO DISMISS

including when, how, and how many times they accessed emails and their general location at the time the emails were accessed," also found the allegation analogous to intrusion upon seclusion. *Id.* Yet, the court determined, "[w]hile Plaintiff characterizes this information as 'intimate details,' the above categories of information gleaned from the tracking pixel are not of the type that would be highly offensive to a reasonable person if intruded upon." *Id.*

The court also determined that, "as a willing subscriber," the plaintiff "could not have been harmed by Defendant's procurement of his name or associated email address," and the "other types of information are not of the kind to which a party has a reasonable expectation of privacy." *Id.* In particular, the "sharing of an IP address is a routine event when browsing on the internet, and third-party cookies generally collect data about when and how a person interacts with a website." *Id.* (citing *Hartley*, 2024 WL 3445004).

Finally, the court rejected the plaintiff's argument that the referenced information can provide companies with consumer insights as "speculative." *Id.* at 5. While the court acknowledged that some injuries may be elevated to a cognizable injury by statute, it ultimately held that, because the information allegedly collected was not the sort protected by the Arizona Records Act, and was not otherwise "sufficiently distinct and palpable," the plaintiff lacked standing. *Id.*

### c.     Summary

The Court should follow the reasoning of the above-cited authorities and hold that Plaintiff has failed to establish a concrete injury. While the Complaint contains a conclusory statement that Defendant invaded Plaintiff's privacy and intruded upon her seclusion by noting when she opened and read emails from them (Compl. ¶ 63), Plaintiff fails to identify any private, sensitive, or confidential information procured by Defendant. Plaintiff does not allege, for example, that Defendant collected "highly sensitive categories of personal information," like "complete credit card information, medical history, or social security number." *See Hartley*, 2024 WL 3445004, at *6. Nor does she allege how data collected concerning when someone opens and reads an email or certain information about

MOTION TO DISMISS

the reader can reveal private information.  There are no allegations that Defendant collected Plaintiff's private or personal information or that such information was publicly disclosed or sold.  Without such specifics, Defendant's mere collection of information indicating when Plaintiff opened and read an email she signed up to receive does not convey private information or constitute the sort of highly objectionable conduct needed to state a claim for invasion of privacy or intrusion upon seclusion.

### B.  Plaintiff Fails to State a Claim Under the Arizona Records Act

The Complaint should also be dismissed because Plaintiff fails to state a cognizable claim under the Arizona Records Act.  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of claims asserted in a complaint.  A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.3d 696, 699 (9th Cir. 1988).  A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must allege sufficient facts "to raise a right to relief above a speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (cleaned up).

#### 1.  *The Arizona Records Act Regulates Records of a Telephone or Other Communications Service Provider Providing A Platform—It Does Not Regulate Parties to a Communication.*

The Arizona Legislature enacted the Arizona Records Act to "[p]rohibit the unauthorized sale of telephone records."  Arizona House Bill Summ., 2006 Reg. Sess. H.B. 2785 (Feb. 15, 2006).  Representative Jonathan Paton, the sponsor of the bill, "explained that this bill has come about due to the proliferation of internet sites which sell [telephone]

-10-

1  records."  *Id*; *see also* Arizona Fact Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006)

2  (discussing the FCC's investigation into "unauthorized procurement and sale of phone

3  records).  The Legislature adopted the Arizona Records Act to combat such elicit sales and

4  direct "telecommunications carriers maintaining telephone records to establish reasonable

5  procedures to protect the consumer against such unauthorized or fraudulent disclosure."

6  Arizona House Bill Summary, 2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006).

7    In its original form, the statute prohibited a person from: a) "knowingly procuring,

8  attempting to procure, soliciting or conspiring with another to procure a telephone record

9  … by fraudulent, deceptive or false means"; b) "knowingly selling or attempting to sell the

10  telephone record … without authorization"; and c) "receiving a telephone record …

11  knowing that the record has been obtained without the authorization of the customer to

12  whom the record pertains or by fraudulent, deceptive or false means."  2006 Arizona

13  Legis. Serv. Ch. 260 (H.B. 2785) § 44-1376.01(A)(1)–(3).  The statute also "require[d]

14  telephone companies that maintained [] telephone records … to establish reasonable

15  procedures to protect against unauthorized or fraudulent disclosure of telephone records[.]"

16  *Id.* § 1376.01(B).  The statute further defined "telephone record" as information retained

17  by telephone companies relating to "the telephone number dialed by the customer or the

18  incoming number of the call directed to a customer or other data related to such calls

19  typically contained on a customer telephone bill."  *Id.* § 44-1376(4).  A "telephone

20  company" was defined as any person providing commercial telephone services to a

21  customer.  *Id.*

22    The Legislature amended the statute in 2007 to additionally ban procurement,

23  selling, and receiving of "public utility" and "communication service" records.  AZ H.R.

24  B. Summ., 2007 Reg. Ses. H.B. 2726 (Mar. 2, 2007).  The Arizona Records Act defines

25  "communication service record" to include:

26     subscriber information, including name, billing or installation address, length
      of service, payment method, telephone number, electronic account

27     identification and associated screen names, toll bills or access logs, records
      of the path of an electronic communication between the point of origin and

28     the point of delivery and the nature of the communications service provided,

1   such as caller identification, automatic number identification, voice mail,
2   electronic mail, paging, or other service features.

3   A.R.S. § 44-1376(1).  The statute also states that the definition does not include "the

4   content of any stored, oral, wire or electronic communication or a telephone record."  *Id.*

5   As before, the purpose of the amendment was to prevent the procurement and sale of

6   confidential personal information under false pretenses.  *See* Arizona Senate Fact Sheet,

7   2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007).  The Arizona Legislature has not further

8   amended the statute since 2007.

9       This statutory language and history are clear that the subject of the Arizona Records

10  Act are records of communications maintained by a service providing the communications

11  platform.  There is nothing in the language of the statute or its history demonstrating that it

12  does or was intended to apply to information known to a party to a communication.  The

13  only court thus far to analyze the legislative history of the Arizona Records Act has held

14  exactly so:

15          The Arizona Records Act was first enacted in 2006 to respond
            to concerns that additional security was needed to prevent
16          unauthorized disclosure of information that was held by
            telecommunication carriers, not direct email marketing … This
17          initial focus on telephone records was expanded to include
            "communication service records" and "public utility records."
18          It again showed a concern that confidential information
            regarding a subscriber to a communication service might be
19          procured by fraudulent or deceptive means.  The Arizona
            legislature has not amended the statute since 2007, and no
20          Arizona court has interpreted "communication service record"
            to include the information gleaned from a tracking pixel.

21

22  *D'Hedouville* at 3–4.  All Plaintiff alleges here is that Defendant is a party to an email

23  communication.  There is no allegation that Defendant is the provider of any

24  communications platform, such as Plaintiff's email or internet service provider.  All that is

25  alleged is that Defendant was a party to email communications that Plaintiff implicitly

26  requested.

27      In *D'Hedouville*, the court, analyzing claims materially identical to those present

28  here, found that the defendant was not a "communication service provider" within the

-12-

meaning of the Arizona Act. *D'Houdeville* at 3. While the court recognized that a communication service provider is not defined in the Arizona Records Act, it noted that "another Arizona statute, the Eavesdropping and Communications Act, provides that a communication service provider means 'any person who is engaging in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." *Id.* at 2 (citing A.R.S. § 13-3001(3)). "That Act defines communication service records with the exact same language as in [the Arizona Records Act]." *Id.* Utilizing this definition, the court determined that the conduct at issue, the "sending of marketing emails and collecting information from the tracking pixel," does turn the defendant into a communication provider, because the defendant "is not engaged in providing a service that allow its users to send or receive communications." *Id.* at 3. Nor is Defendant here.

Additionally, the information Plaintiff alleges Defendant collects facially does not fall within the statutory definition of a "communication service record."[5] Plaintiff claims pixels "capture and log sensitive information including the time and place subscribers open and read their messages, how long the subscribers read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to." Compl. ¶ 4. None of the information Plaintiff claims Defendant collects can be fairly considered any of the statutorily-enumerated examples of a communication service record. *See* A.R.S. § 44-1376(1).

The Arizona Legislature has not amended the statute since 2007. If the Legislature intended the statute to apply to this type of conduct, they would have made that clear—the court should not infer such legislative intent. *See United States v. Bahe*, 201 F.3d 1124, 1132 (9th Cir. 2000) ("Absent any mention in a statute's legislative history that Congress

---

[5] Any ambiguities in the Arizona Records Act must be interpreted in Defendant's favor. The Act is a criminal statute—violation is a class 1 misdemeanor offense. A.R.S. § 44-1376.05. When a "penal statute[ is] susceptible to different interpretations," the rule of lenity requires courts to "resolve all doubts in the defendant's favor." *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004) (citation omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (When a penal statute has "both criminal and noncriminal applications," "the rule of lenity applies" to both.).

MOTION TO DISMISS

intended a change, courts ordinarily will refuse to find that ambiguous statutory language significantly alters an existing statutory scheme.") (quoting *In re Century Cleaning Services, Inc.*, 195 F.3d 1053, 1060 (9th Cir. 1999)); *see also Hartley II* at 1 n.1 (the Arizona Records Act "does not encompass the alleged activity").

Additionally, the Arizona Records Act's legislative history makes clear that the statute is directed at preventing the sale of a log of calls by the user of a telephone system or similar communications platform.  However, Defendant provides no communications platform.  Rather, it is a party to communications with Plaintiff, whether that be a promotional email sent to her, or her clicking on a link and visiting Defendant's website.  Indeed, the conduct of which Plaintiff complains is more akin to a party to a call keeping a record of whether the call was answered (the opening of the email) and/or whether the other party called them back (clicking on a link in the email).  Plaintiff does not allege Defendant's collection of any consumer communication to which Defendant is not a party.  Stated differently, Defendant here is not a third party service provider allegedly selling the communications records of Plaintiff to a willing buyer.  Here, the records at issue relate to Defendant's own interactions with Plaintiff as a party to the communications.  Defendant, just like anyone sending an email using Outlook's "read receipt" feature, is entitled to keep a record of when a recipient opens its emails or when that recipient voluntarily communicates with it via clicking on a link and visiting its website.  Under Plaintiff's interpretation, Party A could be held liable under the Arizona Records Act simply for telling a third party that she called Party B earlier in the day and that Party B answered the call.  Such a reading is clearly beyond the scope of the statute.

Plaintiff's attempts to portray Defendant's alleged conduct as having some insidious quality are unavailing.  An IP address is simply a number that internet service providers assign to devices connected to the internet so that they can communicate with each other.  An individual cannot visit a website, i.e. click on a link in an email bringing them to a webpage, without disclosing the user's IP address, because that is a necessary component of the communication of two devices.  Plaintiff alleges that Defendant embeds links in its

-14-

MOTION TO DISMISS

1  promotional emails to subscribers that take them to pages on Defendant's website and

2  Defendant can identify that the site visitor was the recipient of the email.  Compl. ¶¶ 56–

3  57.  But Plaintiff fails to describe how this function occurs.[6]  Not only does this bald

4  conclusory accusation not meet the requirements of *Twombly* and *Iqbal* (see fn 7, *infra*),

5  stripped of adjectives this is no different than receiving somebody's phone number,

6  receiving a call from that number, and reaching the reasonable assumption that the person

7  who is calling you is the one who provided the number.[7]

8          **2.     *Plaintiff Has Not Alleged That She Is a Customer As Required By***

9                  ***The Arizona Records Act.***

10         The Complaint is also deficient insofar as Plaintiff fails to allege adequately that she

11  is a "customer."  The Arizona Records Act affords relief in a civil suit only to "a *customer*

12  whose communication service records … were procured, sold or received in violation of

13  this article."  A.R.S. § 44-1376.04(A) (emphasis added).  Further, a violation of the

14  Arizona Records Act requires that the defendant procure communication service records

15  "without the authorization of the *customer* to whom the record pertains."  *Id.* § 44-

16  1376.01(A)(1) (emphasis added).  The Complaint does not allege that Plaintiff was

17  Defendant's "customer," or that Plaintiff ever made a purchase from Defendant (including

18

19

20  _____

    [6] In reality, the links in such an email open a page with a customized URL for that specific
21  email, e.g., if it is a link to a "New Arrivals" page it is not the exact same URL as the
    standard "New Arrivals" page, though the content is identical.  By doing this, absent some
22  strange or unforeseen circumstance, the only visitor to that URL would be the subscriber
    who received the email with that customized link.

23  [7] To the extent Plaintiff alleges Defendant collects some information that is beyond the
24  scope of what is normal and necessary for everyday Internet use, the Complaint fails to
    allege sufficient detail to state this claim.  *See Twombly*, 550 U.S. at 555.  Plaintiff cannot
25  simply state the broad capabilities of pixels to collect certain confidential information and
    infer Defendant's malfeasance.  To the extent Plaintiff argues Defendant intentionally
26  placed pixels to collect certain confidential information, such as "email forwarding data,"
27  her claims do not allege adequately this scheme.  *See Hartley*, 2024 3445004, at *7
    ("[A]llegations of what a technology is merely capable of collecting do not equate to
28  sufficient allegations of what that technology actually collected.").

the date and method of such purchase).  Plaintiff, therefore, fails to meet the criteria set forth in section 44-1376.06(A).

For the reasons set forth above, Plaintiff fails to state a claim under the Arizona Records Act.

**IV.**     **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests the Court grant this Motion and dismiss Plaintiff's Complaint.


Dated:  October 28, 2024          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                  By     _____
                                                /s/ P. Craig Cardon
                                              P. CRAIG CARDON
                                              JAY T. RAMSEY
                                              BENJAMIN O. AIGBOBOH
                                              ALYSSA SONES
                                              PATRICK D. RUBALCAVA

                                              *Attorneys for Defendant*
                                              WILLIAMS-SONOMA, INC.

-16-