SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON (Cal. Bar No. 168646)
JAY T. RAMSEY (Cal. Bar No. 273160)
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
ALYSSA SONES (Cal. Bar No. 318359)
PATRICK D. RUBALCAVA (Cal. Bar No. 335940)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:     310.228.3700
Facsimile:     310.228.3701
Email:         ccardon@sheppardmullin.com
               jramsey@sheppardmullin.com
               baigboboh@sheppardmullin.com
               asones@sheppardmullin.com
               prubalcava@sheppardmullin.com

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN SPECTOR, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>WILLIAMS-SONOMA, INC.,<br><br>      Defendant. | Case No. 4:24-cv-06617-HSG<br><br>*Assigned to the Hon. Haywood S. Gilliam, Jr.*<br><br>**DEFENDANT WILLIAMS-SONOMA, INC.'S:**<br><br>**(1) NOTICE OF RENEWED MOTION AND RENEWED MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>[*Declaration of Patrick D. Rubalcava, Request for Judicial Notice, and [Proposed] Order submitted concurrently herewith*]<br><br>Hearing Date: February 6, 2025<br>Hearing Time: 2:00 p.m.<br>Courtroom:    2 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. RELEVANT ALLEGATIONS ..............................................................................................2

III. ISSUES TO BE DECIDED ...................................................................................................3

IV. LEGAL STANDARD ............................................................................................................3

V. THE MOTION SHOULD BE GRANTED ...........................................................................3

    A.    The Complaint Fails To State A Claim For Violation Of The Arizona Records Act ..............................................................................................................4

        1.    Dismissal is Proper Because the Complaint Does Not Allege WSI Procured Information From Plaintiff's Communication Service Providers ............................................................................................4

        2.    Even if WSI Procured the Email-Related Information From a Communication Service Provider, Dismissal Would Still Be Proper Because the Information is Not a "Communication Service Record" ...........7

    B.    The Complaint Should Be Dismissed Because Plaintiff Lacks Statutory Standing ..................................................................................................................8

        1.    The Complaint Does Not Allege That Plaintiff is a "Customer" Under the Act .......................................................................................9

        2.    The Complaint Does Not Allege Plaintiff Suffered Actual Damages ..........9

VI. CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Ashcroft v. Iqbal*
　556 U.S. 662 (2009) ............................................................................................................... 3

*Balistreri v. Pacifica Police Dep'tc*
　901 F.2d 696 (9th Cir. 1988) .................................................................................................. 3

*Bell Atlantic Corp. v. Twombly*
　550 U.S. 544 (2007) ............................................................................................................... 3

*Cetacean Cmty. v. Bush*
　386 F.3d 1169 (9th Cir. 2004) ................................................................................................ 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*
　65 F. Supp. 3d 840 (N.D. Cal. 2014) ..................................................................................... 3

*In re Del Biaggio*
　834 F.3d 1003 (9th Cir. 2016) .............................................................................................. 10

*Eminence Capital, LLC v. Aspeon, Inc.*
　316 F.3d 1048 (9th Cir. 2003) ................................................................................................ 3

*Florida Power & Light Co. v. Lorion*
　470 U.S. 729 (1985) ............................................................................................................. 10

*Leocal v. Ashcroft*
　543 U.S. 1 (2004) ................................................................................................................... 8

*Ma v. Ashcroft*
　361 F.3d 553 (9th Cir. 2004) ................................................................................................ 10

*Maya v. Centex Corp.*
　658 F.3d 1060 (9th Cir. 2011) ................................................................................................ 9

*Naruto v. Slater*
　2016 WL 362231 (N.D. Cal. Jan. 28, 2016), *aff'd*, 888 F.3d 318 (9th Cir. 2018) .................... 8

State Cases

*Maricopa Cnty. v. Barkley*
　168 Ariz. 234, 812 P.2d 1052 (Ariz. Ct. App. 1990) ............................................................. 7

*Qasimyar v. Maricopa Cnty.*
　250 Ariz. 580, 483 P.3d 202 (Ariz. Ct. App. 2021) ............................................................... 7

*State v. Barnett*
　101 P.3d 646 (Ariz. Ct. App. 2004) ....................................................................................... 8

*State v. Chandler*
     244 Ariz. 336 (Ariz. Ct. App. 2017) ........................................................................................ 10

Docketed Cases

*Camp v. Sephora USA, Inc.*
     Case No. 3:24-cv-07330 (N.D. Cal.) ........................................................................................ 1

*Campos v. TJX Companies, Inc.*
     Case No. 1:24-cv-11067 (D. Mass.) ......................................................................................... 1

*Carbajal v. Gap Inc.*
     Case No. 2:24-cv-01056 (D. Ariz.) ........................................................................................... 1

*Carbajal v. Home Depot U.S.A., Inc.*
     Case No. 2:24-cv-00730 (D. Ariz.) ........................................................................................... 1

*Carbajal v. Lowe's Home Centers, LLC*
     Case No. 2:24-cv-01030 (D. Ariz.) ........................................................................................... 1

*d'Hedouville v. H&M Fashion USA, Inc.*
     Case No. C20243386, Order (Ariz. Super. Ct. Pima Cnty. Oct. 11, 2024) .............................. 2

*Knight v. Patagonia, Inc.*
     Case No. 2:24-cv-09349 (C.D. Cal.) ........................................................................................ 1

*McGee v. Nordstrom, Inc.*
     Case No. 2:23-cv-01875 (W.D. Wash.) .................................................................................... 1

*Mills v. Saks.com LLC*
     Case No. 1:23-cv-10638 (S.D.N.Y.) ......................................................................................... 1

Federal: Statutes, Rules, Regulations, Constitutional Provisions

15 U.S.C. § 1681n(a)(1)(B) ............................................................................................................ 10

18 U.S.C. § 2710 ............................................................................................................................ 10

Federal Rule of Civil Procedure 12(b)(6) ............................................................................... 1, 3, 9

Local Rule 7-2 .................................................................................................................................. 1

State: Statutes, Rules, Regulations, Constitutional Provisions

Arizona Telephone, Utility, and Communication Service Records Act, Arizona Revised
     Statutes
     § 44-1376 *et seq.* ...............................................................................................................*passim*

Cal. Civ. Code § 1794(c) ............................................................................................................... 10

Cal. Lab. Code § 226(e) ................................................................................................................. 10

Other Authorities

*Black's Law Dictionary* 1154 (7th ed. 1999) .................................................................................. 10

**NOTICE OF RENEWED MOTION AND RENEWED MOTION**

Please take notice that, on February 6, 2025, at 2:00 p.m., or as soon as thereafter may be heard in Courtroom 2 of the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, the Honorable Haywood S. Gilliam, Jr. presiding, Defendant Williams-Sonoma, Inc. ("WSI") will and hereby does, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Civil Local Rule 7-2, submit this Renewed Motion to Dismiss Class Action Complaint ("Motion").[1]

WSI seeks an order dismissing Plaintiff's Karen Spector's ("Plaintiff") Class Action Complaint ("Complaint") in its entirety.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       INTRODUCTION**

This case is part of a recent wave of putative class actions brought throughout the country under the Arizona Telephone, Utility, and Communication Service Records Act, Arizona Revised Statutes § 44-1376 *et seq.* (the "Arizona Records Act" or "Act").[2] The Arizona Records Act was enacted to prevent "pretexting," i.e., the fraudulent impersonation of a customer of a telephone company or public utility or subscriber to a communication service to obtain that customer's or subscriber's information from the company, utility, or service. These cases now seek to expand this narrow statute to prohibit—and, in fact, *criminalize*—routine commercial behavior of embedding pixels in marketing emails to measure engagement.

---

[1] WSI has been and is currently investigating whether Plaintiff—a member of WSI's loyalty program—agreed to arbitrate her claim against it, which requires, *inter alia*, investigation of loyalty club processes and procedures in place several years ago. WSI brings this Motion because it is required to do in order to respond to the Complaint, but reserves its right to move to compel arbitration in the future should it confirm Plaintiff agreed to arbitrate.

[2] *See*, *e.g.*, *Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:24-cv-00730 (D. Ariz.); *Carbajal v. Gap Inc.*, Case No. 2:24-cv-01056 (D. Ariz.); *Carbajal v. Lowe's Home Centers, LLC*, Case No. 2:24-cv-01030 (D. Ariz.); *Knight v. Patagonia, Inc.*, Case No. 2:24-cv-09349 (C.D. Cal.); *Camp v. Sephora USA, Inc.*, Case No. 3:24-cv-07330 (N.D. Cal.); *Campos v. TJX Companies, Inc.*, Case No. 1:24-cv-11067 (D. Mass.); *Mills v. Saks.com LLC*, Case No. 1:23-cv-10638 (S.D.N.Y.); *McGee v. Nordstrom, Inc.*, Case No. 2:23-cv-01875 (W.D. Wash.).

1       WSI sends marketing emails to customers who sign up to receive them. WSI's emails contain a pixel (small piece of software code) that informs WSI how the email recipient engaged with the email—e.g., whether the email was opened, when, and whether the recipient clicked through a link in the email to visit WSI's website. Plaintiff alleges that WSI's use of pixels in marketing emails violates the Arizona Records Act. Until this recent wave of cases, no one had ever asserted that the Act, a statute that was enacted nearly two decades ago, applied to this standard practice of tracking a recipient's engagement with a marketing email. To date, the one court that has considered "this expansive interpretation of the statute" has rejected it. Declaration of Patrick D. Rubalcava ("Rubalcava Decl.") ¶ 9, Ex. H (*d'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386, Order at 4 (Ariz. Super. Ct. Pima Cnty. Oct. 11, 2024) ("*d'Hedouville*")). This Court should do the same and grant WSI's Motion.

## II.     RELEVANT ALLEGATIONS

      WSI—"'one of the United States' largest ecommerce retailers' of cookware, appliances, and home furnishings"—disseminates marketing emails to drive sales. Dkt. 1, Ex. A (Complaint) ¶ 2. WSI allegedly embeds pixels within these emails "to track its recipients' reading habits" and sell and market more products. *Id*. Plaintiff alleges these pixels "capture and log sensitive information" such as when "subscribers open and read their messages" and "how long it takes it takes the subscriber to read the email" without subscribers' consent. *Id*. ¶ 4.

      Plaintiff—an Arizona resident—allegedly opened and reviewed promotional emails from WSI within the past two years. Dkt. 1, Ex. A (Complaint) ¶ 7. Each time she did so, WSI allegedly "procured her sensitive email information including the time and place she opened and read the messages, how long she read the email, her location, her email client type, her IP address, her device information and whether and to whom the email was forwarded to." *Id*. ¶ 8.

      Based on these allegations, Plaintiff asserts a claim for violation of the Arizona Records Act on behalf of herself and putative class of class of "[a]ll persons within Arizona who have opened a marketing email containing a tracking pixel from" WSI. Dkt. 1, Ex. A (Complaint) ¶ 46.

### III. ISSUES TO BE DECIDED

1. Whether the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for violation of the Arizona Records Act because (a) it does not, and cannot, allege that WSI procured information from Plaintiff's communication service providers and (b) the email-related information allegedly collected by WSI is not a "communication service record" under the Act.

2. Whether the Complaint should be dismissed because Plaintiff lacks statutory standing to pursue a claim for violation of the Arizona Records Act.[3]

### IV. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is a "lack of a cognizable theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient 'factual matter, accepted as true' to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (quoting *Iqbal*, 556 U.S. at 678). Dismissal with prejudice is appropriate where, as here, the complaint cannot be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### V. THE MOTION SHOULD BE GRANTED

The Complaint fails to state a claim because the Arizona Records Act (1) only applies to

---

[3] WSI previously moved to dismiss the Complaint based on, *inter alia*, a failure to allege Article III standing (*see* Dkt. 11 at 8), but later withdrew the motion (*see* Dkts. 13, 14). After further consideration, WSI now withdraws its Article III argument and, instead, seeks dismissal on the basis that Plaintiff has not suffered the actual damages necessary to establish statutory standing under the Arizona Records Act (*see* Section V.C *infra*). However, should the Court determine *sua sponte* that Plaintiff lacks Article III standing, WSI agrees that this matter should be remanded.

information procured from a communication service provider, and (2) does not apply to the email-related information at issue here. Even more, Plaintiff lacks statutory standing because the Complaint does not allege she is a "customer" under the Act who has suffered actual damages.

**A.    The Complaint Fails To State A Claim For Violation Of The Arizona Records Act**

       *1.    Dismissal is Proper Because the Complaint Does Not Allege WSI Procured Information From Plaintiff's Communication Service Providers*

       The Arizona Legislature enacted the Arizona Records Act to prevent "pretexting," i.e., impersonating a telephone company customer to obtain that customer's telephone records from the company to then sell on the Internet. Rubalcava Decl. ¶ 3, Ex. B (AZ H.R. S. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006)) (noting "there are over 40 'data broker' companies that…have fraudulently gained access to telephone records by posing as the customer" and "then offer[ed] the records for sale on the Internet without the customer's consent or knowledge, a practice known as 'pretexting'"). The Arizona Legislature adopted the Act to prohibit this "unauthorized sale of telephone records" and to "[d]irect[] telecommunications carriers maintaining telephone records to establish reasonable procedures to protect the consumer against such unauthorized or fraudulent disclosure." *Id.*, ¶ 2, Ex. A (AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006)).

       In its original form, the Act prohibited a person from: (1) "knowingly procuring, attempting to procure, soliciting or conspiring with another to procure a telephone record … by fraudulent, deceptive or false means"; (2) "knowingly selling or attempting to sell the telephone record … without authorization"; and (3) "receiving a telephone record … knowing that the record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Rubalcava Decl. ¶ 5, Ex. D (2006 Arizona Legis. Serv. Ch. 260 (H.B. 2785)) § 44-1376.01(A)(1)–(3)). The Act defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4). And a "telephone company" was defined as any person providing commercial telephone services to a customer. *Id.* Any person who violated the Act was subject to civil suit and criminal penalties. *Id.* at §§ 44-1376.04, 44.1376.05.

The Arizona Legislature amended the Act in 2007 to "expand" its coverage to "public utility" and "communication service" records. Rubalcava Decl. ¶ 7, Ex. F (AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (Mar. 2, 2007)). As before, the intent was to combat "pretexting," *i.e.*, "the practice of getting personal information under false pretenses." *Id*. ¶ 6, Ex. E (AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (Feb. 19, 2007)); *see also id.* ¶ 8, Ex. G (AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007)). There have been no further amendments of the Act.

As such, the Arizona Records Act, as amended, prohibits a person from: (1) "[k]nowingly procur[ing], attempt[ing] to procure, solicit[ing] or conspir[ing] with another to procure a public utility record, a telephone record or communication service record of any [Arizona] resident … without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means"; (2) "[k]nowingly sell[ing] or attempt[ing] to sell a public utility record, a telephone record or communication service record of any [Arizona] resident"; and (3) "receiving a public utility record, a telephone record or communication service record of any [Arizona] resident … knowing that the record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Ariz. Rev. Stat. §§ 44-1376.01(A)(1)-(3). As before, the statute subjects any violator to civil suit and criminal penalties. *Id*. §§ 44-1376.04, 44.1376.05.

When it amended the Act, the Arizona Legislature defined the newly-covered "communication service record[s]" and "public utility record[s]." A.R.S. §§ 44-1376(1), (4). Under the statute, a "communication service record" is:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1). Excluded from this definition is "the content of any stored, oral, wire or electronic communication or a telephone record." *Id.*

The Act's plain language confirms that the term "communication service record" refers to certain information of the "subscriber" to a particular "communication service"—"subscriber

1    information" only a provider of communication service would have.  For example, only a
2    communication service provider would have records of a communication service subscriber's
3    "billing or installation address" for the communication service, "length of [the communication]
4    service," and "payment method" for the communication service.  By way of further example, only
5    a communication service provider would have records of the "nature of the communication service
6    provided" to the communication service subscriber.

7         WSI—a retailer—is a mere party to emails requested by Plaintiff.  It is not a provider of any
8    communication service; as such, information it allegedly collects *about its own emails* cannot be a
9    "communication service record."  Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3 (holding that
10   information retailer collects about its own emails cannot be "communication service records" under
11   the Act).  And there is no allegation that WSI procured this email-related information from one of
12   Plaintiff's actual communication service providers (*e.g.*, internet service providers or wireless data
13   carriers).  *Id*. (dismissing Act claim because, *inter alia*, plaintiff did not allege retailer "procured his
14   communication service records that were retained by [a] communication service provider").  The
15   Act, therefore, does not and cannot apply to WSI's alleged use of pixels in its marketing emails.  *Id*.

16        The Arizona Eavesdropping and Communication Act, codified at Ariz. Rev. Stat. § 13-3001
17   *et seq*. ("ECA"), another statute governing communication service records, confirms this
18   conclusion.  Section 13-3018 of the ECA, which was enacted in 2000, authorizes prosecutors to
19   issue to subpoenas "to all communication service providers that do business in [Arizona] or that
20   furnish communication services to persons within [Arizona]" to obtain "communication service
21   records[.]" Ariz. Rev. Stat. § 13-3018(A)-(B).  Its definition of "communication service records" is
22   the same as the Arizona Records Act's definition of "communication service record."  *Compare id*.
23   § 13-3018(G) *with id*. § 44-1376(1).  And it makes clear that "communication service records" are
24   records held by a "communication service provider." *Id*. § 13-3018.

25        There is no reason to believe that the Arizona Legislature imported the ECA's definition of
26   "communication service records" into the Arizona Records Act seven years later but intended the
27   term as used in the Arizona Records Act to have a significantly different (and significantly broader)
28   meaning than it does in the ECA.  Indeed, to adopt the Complaint's definition would be to

improperly "interpret the legislature's use of the identical phrase in two statutes relating to the same general subject matter as having two entirely different meanings." *Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 238, 812 P.2d 1052, 1056 (Ariz. Ct. App. 1990); *see also Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 587, 483 P.3d 202, 209 (Ariz. Ct. App. 2021) ("a word or phrase used in related statutes should be construed to bear the same meaning throughout"). *d'Hedouville*—the only decision of which WSI is aware that has considered a pixel claim under the Arizona Records Act—concluded this would be improper and held that the ECA's "definition of communication service provider…should be read in harmony with the definitions in [the Act] because the statutes are of a related subject and define 'communication service record' with identical descriptions." Rubalcava Decl. ¶ 9, Ex. H at 3.

The interpretation of "communication service record" to mean information maintained a communication service provider is the only one that makes sense in the context of the Act's history and narrow purpose, *i.e.*, to stop "pretexters" from posing as communication service subscribers to obtain subscribers' information from the communication service provider. WSI is not a "pretexter" using fraudulent means to obtain Plaintiff's subscriber information from the provider of her communication service. It is a party to the communications and is allegedly collecting information about those communications. This conduct bears no resemblance to "pretexting" and, instead, is more like a party to a call keeping a record of whether the call was answered (the opening of the email) and/or whether the other party called them back (clicking on a link in the email). WSI, just like anyone sending an email using an email client with a "read receipt" feature (e.g., Microsoft Outlook), is entitled to keep a record of when a recipient opens its emails or when that recipient voluntarily communicates with it via clicking on a link. If the Arizona Legislature intended to regulate such conduct, it could have amended the Arizona Records Act in the near two decades since it was enacted to do so. It has not.

> **2.    Even if WSI Procured the Email-Related Information From a Communication Service Provider, Dismissal Would Still Be Proper Because the Information is Not a "Communication Service Record"**

Even if the email-related information WSI allegedly collects about its own emails were the

subject of the Arizona Records Act, the claim would still fail because this information does not fall within the statutory definition of "communication service record."[4]  Again, the Act defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1).  Notably missing from this definition is the email-related information WSI allegedly collects using pixels, *i.e.*, the "time and place subscribers open and read their messages, how long it takes the subscriber to read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to."  Dkt. 1, Ex. A (Complaint) ¶ 4.  That is because the email-related information WSI allegedly collects does not qualify as a "communication service record" under the Act.  Rubalcava Decl. ¶ 9, Ex. H at (*d'Hedouville*) 3–4 (dismissing Arizona Records Act claim because, *inter alia*, "the information gleaned from a tracking pixel" does not constitute a "communication service record").

**B.     The Complaint Should Be Dismissed Because Plaintiff Lacks Statutory Standing**

"A plaintiff seeking redress for a statutory violation must establish statutory standing." *Naruto v. Slater*, 2016 WL 362231, at *2 (N.D. Cal. Jan. 28, 2016), *aff'd*, 888 F.3d 318 (9th Cir. 2018) (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004)).  Statutory standing exists "when a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." *Bush*, 386 F.3d at 1175 (internal citations and quotation marks omitted).  The legislature must "make its intentions clear before [the courts] will construe a statute to confer standing on a particular plaintiff." *Id.*  Whether a plaintiff has stated a basis for statutory standing

---

[4] Any ambiguities in the Arizona Records Act must be interpreted in WSI's favor.  The Act imposes criminal penalties.  A.R.S. § 44-1376.05.  When a "penal statute[ is] susceptible to different interpretations," the rule of lenity requires courts to "resolve all doubts in the defendant's favor." *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004) (citation omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (When a penal statute has "both criminal and noncriminal applications," "the rule of lenity applies" to both.).

1   is tested under Federal Rule of Civil Procedure 12(b)(6).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### 1. *The Complaint Does Not Allege That Plaintiff is a "Customer" Under the Act*

Only a "customer whose communication service records, telephone records or public utility records were procured…in violation" of the Arizona Records Act has standing to pursue a civil action.  Ariz. Rev. Stat. § 44-1376.04(A).  Read logically, this refers to a "customer" of a communication service, telephone company, or public utility whose information was procured from one of these entities without authorization or through fraudulent means.  Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3 (holding that Section 44-1376.04(A) of the Act "contemplates a customer, or subscriber, of a communication service"); *see also* § 44-1376.01(A)(1) (prohibiting procuring records "without the authorization of the customer to whom the record pertains").  The Complaint does not allege that Plaintiff is a "customer" of any communication service, telephone company, or public utility.  And, as set forth above, the Complaint does not allege that WSI procured the email-related information it allegedly collected in connection with its own communications from any of those entities.  Plaintiff's Arizona Records Act claim, therefore, fails.  Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3.

Even if "customer" were interpreted to mean the "customer" of the person allegedly procuring the records in violation of the Act (which would make no sense), the Complaint would still fail to state a claim because it does not allege—even in conclusory fashion—that Plaintiff is WSI's "customer."  It alleges Plaintiff received emails from WSI.  But WSI's products are not emails; they are "cookware, appliances, and home furnishings." Dkt. 1, Ex. A (Complaint) ¶ 2. And the Complaint does not allege Plaintiff ever purchased any items from WSI.  Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3 ("Plaintiff has not alleged that he is a customer of H&M because he does not claim that he has purchased any item from H&M. Even if he had, it would not change the outcome because the act contemplates a customer, or subscriber, of a communication service").  As such, Plaintiff lacks standing to pursue a claim under the Act and the Complaint should be dismissed.

### 2. *The Complaint Does Not Allege Plaintiff Suffered Actual Damages*

Plaintiff also lacks statutory standing under the Arizona Records Act because she does not

state a claim involving actual damages.

The Arizona Records Act provides that a "customer" whose records were procured in violation of the statute may bring a civil action to recover "[d]amages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person entitled to recover receive less than one thousand dollars." A.R.S. § 44-1376.04(A)(2). The statutory language does not suggest that the referenced one thousand dollars is a penalty or a liquidated damages amount, as the language is expressly tied to a "customer's" harm. *See id.*; *compare Black's Law Dictionary* 1154 (7th ed. 1999) (defining "statutory penalty" as one "imposed for a statutory violation; esp., a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered").[5] To have standing, therefore, a plaintiff must have suffered actual damages.[6]

Even if the statutory language were ambiguous, the legislative history proves that the legislature intended to require actual damages to bring suit. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985); *In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016); *State v. Chandler*, 244 Ariz. 336, 338 (Ariz. Ct. App. 2017). The Arizona State Senate Fact Sheet for House Bill 2875 (which would later become the Arizona Records Act) stated that the purpose of the act was to "[p]rohibit[] the procurement and sale of telephone records through unauthorized, fraudulent or deceptive means." Rubalcava Decl. ¶ 4, Ex. C (AZ S. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Apr.

---

[5] Unlike other statutes, the text does not refer to this $1,000 figure as any type of "penalty," "liquidated damages," or provide $1,000 as an alternative to an actual damages recovery. *See, e.g.*, Cal. Lab. Code § 226(e) (referring to violation as a "penalty"); Cal. Civ. Code § 1794(c) (same); 18 U.S.C. § 2710 ("The court may award … actual damages but not less than *liquidated damages* in an amount of $2,500") (emphasis added); 15 U.S.C. § 1681n(a)(1)(B) (calling for recovery of "actual damages sustained by the consumer as a result [of a violation] *or* $1,000, whichever is greater") (emphasis added).

[6] This is the only interpretation that makes sense, as a contrary interpretation would mean that a plaintiff who suffered no actual damages would have a claim that is not cognizable in Arizona courts (*see* Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 5) but that was permissible elsewhere. Allowing that plaintiff to bring her claims elsewhere would be to permit the plaintiff to pursue a claim in any court **except for** Arizona courts. The Arizona Legislature did not intend to pass a statute wherein a subset of claims could only be pursued outside of the State; the Act was enacted with the express purpose of protecting Arizona residents. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (courts should avoid interpretations that "would produce absurd results") (citation omitted).

25, 2006)). As to a potential remedy for a violation, the Senate Fact Sheet also stated the Act would:

> Allow[] a person whose telephone records were procured, sold or received in violation of the telephone record requirements to recover from the person that committed the violation, in a civil action, the following:
>
> …
>
> b) damages equal to the sum of the actual damages suffered by the person and any profits made by the violator as a result of the violation. **Damages must be at least $1,000**.

*Id.* at 2 (emphasis added). The legislative history makes clear, therefore, that the Act was intended to provide a civil remedy to only individuals who have suffered damages.

Plaintiff's claim arises out of WSI's alleged use of pixels that identify when emails were opened and read. Yet, the Complaint is devoid of any allegation that Plaintiff has suffered actual damages. *See generally* Dkt. 1, Ex. A (Complaint). At most, the Complaint concludes that WSI "invaded" Plaintiff's "right to privacy by its invasive surveillance of [her] sensitive reading habits," which allegedly "also intruded upon [her] seclusion." *Id.* ¶ 63. But the Complaint does not allege that Plaintiff suffered any actual damages as a result of the alleged invasion of privacy. As such, Plaintiff does not have statutory standing to pursue a civil claim under the Arizona Records Act.

## VI. CONCLUSION

For the foregoing reasons, WSI respectfully requests the Court grant this Motion and dismiss the Complaint with prejudice.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: December 4, 2024     By     */s/ P. Craig Cardon*
                                       P. CRAIG CARDON

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC.

SMRH:4910-0425-7795.2